# M&B
## MOSKOWITZ & BOOK, LLP

Avraham C. Moskowitz
amoskowitz@mb-llp.com

345 Seventh Avenue
New York, NY 10001
Phone: (212) 221-7999
Fax: (646) 833-1658

October 23, 2019

Hon. Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    United States v. Darrell Hudson
                 18 Cr. 454 (KPF)

Dear Judge Failla:

This letter is respectfully submitted in connection with the sentencing of Darrell Hudson ("Darrell"), which is currently scheduled to take place before Your Honor on November 6, 2019.

As set forth in detail below, it is respectfully submitted that the mandatory minimum sentence of five years' imprisonment would be sufficient but not greater than necessary to advance the statutory purposes of sentencing articulated at 18 U.S.C. § 3553(a).

        **I.**    **Sentencing Standard**

The Supreme Court has now repeatedly made clear that the Sentencing Guidelines are advisory. Although the Guidelines serve as "the starting point and the initial benchmark," after correctly calculating the Guidelines range, the court must then consider the 18 U.S.C. § 3553(a) factors "to determine whether they support the sentence requested by a party" and "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596-97 (2007).

The Supreme Court also has instructed that a district court may not "presume that a sentence within the applicable Guidelines range is reasonable." *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (*per curiam*). Rather, sentencing courts must, after considering the Guidelines range and the § 3553(a) factors, make an individualized assessment and impose a sentence that is "sufficient, but not greater than necessary" to meet the objectives of sentencing. *See* 18 U.S.C. § 3553(a); *Gall v. United States, supra.*

Hon. Katherine Polk Failla
October 23, 2019
Page 2

The § 3553(a) factors include, among other things:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . [and]

(6) the need to avoid unwarranted sentence disparities . . .

The defendant respectfully submits that these factors weigh strongly in favor of a below-Guidelines sentence of 60 months' incarceration, the applicable mandatory minimum sentence in this case.

## II.   The Relevant 3553 (a) Factors

### A. Darrell's Personal History and Characteristics

The details of Darrell's offense are set forth in the pre-sentence investigation report ("PSR") prepared by the Probation Department and will not be repeated in full herein. In considering his criminal conduct, however, it is noteworthy that Darrell became involved in the conspiracy to which he pleaded guilty at a time when his grandmother, who raised him, was critically ill and that she died soon thereafter. Darrell was extraordinarily close to his grandmother, and her illness and subsequent death were devastating to him. Without excusing Darrell's conduct, it is submitted that these circumstances, coupled with Darrell's own history of inadequately treated bipolar disorder and ADHD, go some way to explaining why he became involved in the conspiracy for which he now faces sentencing.

Darrell's mother has been a drug addict his entire life, and his father was not interested in raising a child. When Darrell was born, therefore, his mother immediately turned him over to her own parents, who became his legal guardians and raised him. He was particularly attached to his grandmother, Flossie Hunter, whom he thought of as his mother.

Flossie worked as a "lunch lady" at a public school for 30 years, and Darrell's grandfather was a factory worker. They had very little money, but what little resources they had went to Darrell as a child. According to Darrell's maternal aunt, Stephanie Hudson, Flossie "spoiled" Darrell, showing him a great deal of affection and treating him with kindness.[1] Stephanie, too, contributed what she could, helping to raise Darrell and helping his grandparents keep food on the table. When Darrell was twelve, his mother gave birth to a second son. At that time, Darrell's grandparents lacked the resources to raise both boys. Accordingly, Stephanie obtained legal custody of Darrell's brother Isaiah and raised him in her own home.

Darrell was diagnosed with attention deficit hyperactivity disorder when he was eight—a diagnosis very likely related to his prenatal drug exposure. Doctors prescribed Ritalin, and he took it daily for the next several years, to little effect. Even while medicated, Darrell found it difficult to concentrate in school, and his teachers found him disruptive. For that reason, he attended special education classes beginning in third grade.

Darrell was sent to inpatient treatment for behavior problems related to his ADHD when he was twelve, and again at fifteen, but the treatment was ineffective. He was diagnosed with depression at sixteen, for which he was prescribed Seroquel, and his doctors subsequently prescribed Abilify because Darrell was experiencing mood swings. Unfortunately, the side effects of Darrell's new medication regime were disabling, and he soon stopped taking them.

Darrell began smoking marijuana on a near-daily basis when he was thirteen. Marijuana use is common among adolescents suffering from ADHD because it has a calming effect without all of the side effects associated with drugs like Ritalin, and Darrell smoked marijuana as a form of self-medication. According to a February 2019 study in the American Journal of Psychiatry, cannabis use in adolescence appears to cause cognitive impairments and developmental delays.[2] In particular, cannabis reduces adolescents' ability to focus on relevant stimuli in the presence of irrelevant stimuli (i.e., to pay attention to teachers and focus on tasks) and to override strong but inappropriate behavioral tendencies, such as acting out in response to strong emotions. Thus, when Darrell self-medicated with marijuana, the drug had an effect exactly opposite to the effect appropriate medication and treatment would have had: it reduced his ability to focus, delayed his cognitive development, and reinforced his tendency to act out

---

[1] Stephanie Hudson's letter to the Court is attached as Exhibit 2.

[2] Morin *et al*, "A Population-Based Analysis of the Relationship Between Substance Use and Adolescent Cognitive Development," Am. J. Psychiatry 176:2 (February 2019).

inappropriately. Despite at least two attempts to quit, including by going to outpatient treatment, Darrell continued to use marijuana until his arrest in this case.

When Darrell's grandmother became ill in 2012, Darrell became her primary caregiver at home. Darrell is passionate about cooking, and he showed his devotion to his grandmother during her illness by preparing meals for her, cleaning and doing chores, and attending to her medical needs. He remained her primary caregiver until she passed away in 2017.

Since his incarceration in this case, Darrell has had a spotless disciplinary record at the MCC, despite the harsh conditions of confinement there. He reportedly shares a single toilet and shower with 26 men, in a facility infested with roaches and rodents. When not working at his job in the facility's kitchen or attending a drug counselling program, Darrell spends his time reflecting on the choices that ultimately brought him before the Court, and he is determined never to repeat the mistakes of his past. As he states in his letter to the Court, attached as Exhibit 1, Darrell "chose the wrong path" when he "started to hang around negative people," and he is now determined "to be a better person, for [him]self as well as his loved ones and those in [his] community," including his two young daughters, to whom he is devoted.

> B. The Remaining § 3553(a) Factors and the Statutory Objectives of Sentencing Favor a Mandatory Minimum Sentence

It is respectfully submitted that the mandatory minimum sentence would be sufficient, and that a Guidelines sentence would be greater than necessary, to achieve all of the goals of sentencing set forth in § 3553(a).

Promoting Respect for the Law; Providing Just Punishment for the Offense

Five years in federal prison is a very substantial punishment, especially when imposed for a non-violent drug offense. Indeed, society has begun to rethink the draconian mandatory minimum sentences that have long been the foundation of the discredited "war on drugs." In this case, a sentence of five years' imprisonment would demonstrate that people who commit drug offenses will be justly punished, but would also promote respect for the law by recognizing that those offenders will nevertheless be treated as individuals capable of redemption. It is therefore respectfully submitted that promoting respect for the law in this case can best be achieved by imposing the mandatory minimum sentence of five years on Darrell.

Affording Adequate Deterrence to Criminal Conduct

A five-year custodial sentence would also be sufficient but not greater than necessary to achieve the goal of general deterrence in this case.

There can be no doubt that a five-year federal sentence is a very substantial penalty, especially by comparison to the sentences frequently imposed for drug offenses in the state system. It is highly unlikely that imposing the 70-month sentence recommended by the Probation Department would have any additional deterrent effect over and beyond the deterrence to be achieved through imposition of the 60-month mandatory minimum. This is especially true in light of the social science research suggesting that the prospect of a long term of imprisonment does not generally provide a substantially greater deterrent effect than does the prospect of imprisonment in general. See, e.g., Steven F. Durflauf and Daniel S. Nagin, *Imprisonment and Crime: Can Both Be Reduced?*, 10 CRIMINOLOGY & PUBLIC POLICY 13 (Feb. 2011). Thus, a sentence greater than 60 months is not necessary to serve the goal of general deterrence.

Protecting the Public from Future Crimes by Darrell

A five-year term of imprisonment would also be sufficient, but not greater than necessary, to serve the statutory goal of protecting the public against possible future crimes by Darrell. Although Darrell has a number of prior convictions, the longest prison term he has ever served was one year. Indeed, he has already spent longer at the MCC than he served in connection with any of his previous convictions, under conditions that he describes as significantly worse than any he has experienced before. Thus, the sentence in this case will represent his first lengthy period of incarceration and will teach him, in a way he never learned before, the serious consequences of engaging in illegal behavior.

Additionally, many of his prior convictions occurred when he was an adolescent or young adult. There is an ever-increasing body of evidence that even otherwise normal adolescents and young adults are less capable of controlling their impulses, exercising self-regulation, assessing and avoiding risk, and rationally considering alternative outcomes of their behavior than older adults. They are less able to consider the consequences of their actions, compared to adults, and they are more susceptible to their peers' negative influences. This is so because the brain does not reach full maturity until sometime in the mid-twenties, when the frontal lobes of the brain become fully developed. The prefrontal cortex, which is concerned with "Executive" functions, is often referred to as the "CEO" of the body and provides humans with advanced cognition. It enables us to prioritize thoughts, imagine, think in the abstract, anticipate consequences and control impulses.[3] In adolescents with ADHD, maturity of the pre-frontal cortex can be delayed as much as five years, even without the compounding

---

[3]See Adolescence, Brain Development and Legal Culpability. ABA, Juvenile Justice Center, January, 2004; Frances Jensen, M.D. &Amy Ellis Nutt (2015), *The Teenage Brain*. Harper, New York; Daniel M. Segal, M.D. (2015) *Brainstorm: The Power and Purpose of The Teenage Brain.* Tarcher/Penguin, New York.

developmental effects caused by cannabis exposure. [4]  In some cases, the brains of ADHD patients do not reach maturity until age 27, or even older.[5]

Darrell turned 30 while incarcerated in connection with this case, and his conduct while incarcerated demonstrates that he has already begun to turn the corner from his impetuous youth and to make better, more mature decisions.  He has a completely clear disciplinary history for the more than 14 months he has been incarcerated at the MCC, where he was recently accepted into a drug counselling program after being on the waiting list for several months.  He works the morning shift in the kitchen, where he is able to indulge his life-long love of cooking. while gaining professional kitchen skills that will help him find gainful employment after his release.  He is also studying to obtain his GED.  These activities amply demonstrate that Darrell has matured and will continue to mature while serving the remainder of his sentence, and that a term of imprisonment in excess of the mandatory minimum would be greater than necessary to protect the public from future crimes by him.  *Cf. Gall v. United States*, 128 S.Ct. 586, 601 (2007) (noting scientific studies which "conclude that human brain development may not become complete until the age of twenty-five") (citation and internal quotation marks omitted); *Roper v. Simmons*, 543 U.S. 551, 570 (2005) (considering studies demonstrating that "the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside") (citation omitted).

Avoiding Unwarranted Sentence Disparities

As Congress implicitly recognized when establishing a five-year mandatory minimum sentence for Darrell's offense, a five-year sentence for conduct similar to that Darrell has admitted is firmly within the heartland of appropriate sentences.  Imposing the mandatory minimum would therefore avoid unwarranted disparities in sentencing when measured against the general community of offenders nationwide.

A five-year sentence would also avoid unwarranted disparities as measured against the sentences imposed on other individuals indicted in this case.  Two of Darrell's co-defendants have been sentenced thus far.  Jonathan Padilla received a sentence of 66 months under the same subsection of the statute for which Darrell faces sentencing.  Based on the facts concerning Padilla's conduct as set forth in the PSR, Padilla was significantly more culpable than Darrell.  Moreover, Padilla also had a significantly greater criminal history, with 18 previous arrests, including six for drug distribution.  By comparison, Darrell's arrest in this case was his first conviction for drug distribution.  Jackie Cooper pleaded guilty to a subsection not requiring a mandatory minimum and was sentenced to 46 months of incarceration.  Thus,

---

[4] Brain Matures a Few Years Late in ADHD, But Follows Normal Pattern. The National Institute of Mental Health: www.nimh.nih.gov, November 12, 2007, Press Release

[5] Russell E. Barkley, Ph.D. *Executive Functions:What They Are, How They Work and Why They Evolved.* (2012). Guildford Press, N.Y.

imposing a 60-month sentence on Darrell, who is less culpable than Padilla but arguably more culpable than Cooper, would avoid unwarranted disparities in sentencing among co-defendants in this case.

## **Conclusion**

It is respectfully submitted that all of the relevant §3553(a) factors support the imposition of the mandatory minimum sentence of five years of imprisonment on Darrell.

Thank you in advance for your consideration of this letter.

Respectfully submitted,

Avraham C. Moskowitz

Christopher Neff

cc: AUSA Sarah Krisoff (by email)
AUSA Frank Balsamello (by email)
AUSA Gina Castellano (by email)

**EXHIBIT 1**

1) Darrell Hudson #86046054
Metropolitan Corr. Center
150 Park Row
New York, New York 10007

Your Honorable

First and Foremost I Would Like To Thank You For This Opportunitty, For Allowing Me To Express Myself.

I Was Born And Raised In The Bronx New York. I Come From A Great Family, However; I Chose the Wrong Path And Started to Hang Around Negative People.

Knowing Better But Not Doing Better Became My Problem. Also, Allowing Myself To Be Influnced By Peer Pressure.

Since My Federal Incarceration of 8-13-2018, I Have Been Continuosly Reflecting, On My Life. Deep Down In My Heart, I Know That I'm A Good Decent Person And Not A Criminal.

I Was Raised By My GrandParents, Who Were Working Class! Church Going - Christian People.

Pg.#2

I Now Realize The Seriousness Of Breaking The Law. For that, I Sincerely, Apoligize! I Want To Also Apoligize For Anyone Else That I Might Have Offended Due To My Actions.

I'm Now 30 Years Of Age, I Have Two Precious Little Girls Both Ages 8 & 6 Years Of Age. I'm Also A Major Part Of My Daughters Lives.

I Also Took Care Of My GrandMother On A Consistant Basis For 5 Years Until, She Passed Away Back In 2017.

I Sincerely Want To Be A Better Person, For Myself As Well As For My Love Ones, And Those In My Community And Communities Abroad.

I Would Like To Thank You For Your Time Concerning This Matter.

Sincerely, Darell Hudson

P.S. Have A Great Day!

**EXHIBIT 2**

October 16, 2019

Miss Stephanie Hudson
Bronx, NY 104

Honorable Katherine P. Failla
United States District Court
40 Foley Square
New York, NY 10007

Darrell T Hudson


Your Honor,
The purpose of this letter is to provide a character reference for Mr. Darrell T. Hudson, my nephew, who I've known since he was one. My parents adopted Darrell when he was one because his mother was on drugs and couldn't take care of him. My parents, his grandparents, raised him and I assisted in his upbringing, doing my best to promote and support his mental, emotional, social and physical development while encouraging him through the difficult times of his relationship with his mother. He has had his difficulties growing up. He dropped out of high school but he has always tried to be a good citizen. He has been going to counseling, attending Baptist church and supporting our extended family as we go through life's demands and changes. Thank you.

Respectfully,

Stephanie Hudson