

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 30, 2019

**BY ECF**

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Darrell Hudson, a/k/a "Skip,"* **18 Cr. 454** (KPF)

Dear Judge Failla:

      The Government submits this letter in advance of the sentencing of Darrell Hudson (the "defendant"), and in response to the defendant's sentencing submission, dated October 23, 2019 ("Def.'s Mem."). As explained below, the Government respectfully submits that a sentence within the range of 70 to 87 months' imprisonment, as called for by the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), should be imposed in this case.

### I.    Offense Conduct

      For at least several years, the defendant distributed significant quantities of controlled substances in and around the Lambert Houses in the Bronx, New York. *See* United States Probation Office's Presentence Investigation Report ("PSR") ¶ 21. During that time, he worked with others—including co-defendants James Crooms and Jonathan Padilla—to sell crack cocaine and heroin to addicts throughout the community. Indeed, in the course of this investigation, the defendant sold to an undercover officer or confidential informant on *eighteen* separate occasions. These controlled buys consisted of fifteen purchases of crack cocaine, two heroin buys, and one purchase of both crack and heroin. During an arrest on April 11, 2017, officers found an additional ten glassines of heroin on the defendant's person.

      These sales and seizures were only a small percentage of the defendant's drug activity. Indeed, in late 2017 and early 2018, agents conducted wiretaps on Crooms's and Padilla's phones, and they intercepted the defendant speaking with both of these co-conspirators about their ongoing business. From those calls, it was clear that Crooms supplied the defendant drug product to sell to others. The defendant, in turn, supplied Padilla, sometimes allowing Padilla to do "flips," whereby Padilla would bring drug customers to the defendant and flip the product for a quick profit or receive credit towards product that Padilla bought for his own use.

October 30, 2019
Page 2

## II. The Defendant's Plea and Applicable Guidelines Range

Pursuant to an agreement with the Government, the defendant pled guilty on June 5, 2019, to one count of conspiring to distribute 28 grams and more of crack cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). PSR ¶ 4.[1] In the plea agreement, the parties stipulated that this offense carries a mandatory minimum sentence of five years' imprisonment and that the advisory Guidelines range was 84 to 105 months' imprisonment, based on an offense level of 25 and a Criminal History Category of IV. *Id.* ¶ 5.

The Probation Office calculates a range of 70 to 87 months' imprisonment, based on an offense level 25 but a Criminal History Category of III. *Id.* ¶¶ 35-57. The Government accepts Probation's calculation.

## III. Discussion

### A. Applicable Law

Although *United States v. Booker*, 543 U.S. 220, 264 (2005), held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After performing that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the four legitimate purposes of sentencing, as set forth below, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statement by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and

---

[1] The PSR erroneously states that the plea was on May 13, 2018, which predates the defendant's arrest. The plea was actually in May 2019.

>    (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. Analysis

The Government respectfully submits that a sentence in the range of 70 to 87 months' imprisonment is appropriate in light of all of the sentencing factors set forth above, and would be sufficient but not greater than necessary to accomplish the goals of sentencing in this case.

*First*, the nature and circumstances of the offense weigh in favor of such a sentence. As the Court is well aware, the drug trade throughout this city causes immeasurable harm to addicts, their families, and average citizens who are victimized by the crimes that users commit in order to continue feeding their habits. For years, the defendant routinely sold poison to other people for them to ingest, and he also supplied Padilla through "flips." The aggregate weight of drugs that the defendant sold and conspired to sell is extremely significant. In addition, certain communities in the Bronx are especially hard hit by secondary effects of drug activity; and in recent years, the Lambert Houses and greater Tremont neighborhood have seen countless murders, non-fatal shootings, stabbings, robberies, assaults, and other acts of violence, all stemming from battles over drug territory and other drug-related conflicts. The defendant's continuous participation in that market contributed in material ways to the environment where violent actors could thrive, prosper, and inflict even greater harms on the rest of the community.

*Second*, the defendant's history and characteristics weigh heavily in favor of a sentence within the Guidelines range of 70 to 87 months' imprisonment. As noted above, the defendant has been arrested more than 20 times, many of which were for drug and weapons offenses. Indeed, since 2005, the defendant has been arrested at least once every year except 2006 and 2012. He has sustained *eight* prior convictions, and in 2013, he was sentenced to a year in prison for possessing a loaded .38-caliber revolver. Despite these convictions and near-constant contacts with law enforcement, the defendant continued to sell crack cocaine, heroin, and other drugs. The defendant's sentence must reflect the duration and extent of his criminal livelihood.

Although sad and difficult circumstances, having a sick grandmother and suffering from ADHD do not drive a person to sell crack cocaine and heroin. *See* Def.'s Mem. at 2. There is simply no logical connection between the common stresses of life, on the one hand, and the defendant's decision to support himself as a long-term drug dealer. Nor does his history of using marijuana. These aspects of the defendant's history, while relevant to who he is as a person, in no way explain or mitigate his criminal conduct; and they do not warrant a reduction in his sentence in this case.

Moreover, while the defense submission stresses that offenders must "be treated as individuals capable of redemption," Def.'s Mem. at 4, it fails to address how a below-Guidelines sentence is appropriate when the defendant has been given chance after chance to redeem himself following lenient sentences, and he has failed to do so. The defendant's prior sentences,

in chronological order, are conditional discharge, time served, conditional discharge, one year in prison, conditional discharge, seven days' imprisonment, conditional discharge, conditional discharge. *See* PSR ¶¶ 48-55. Sixteen of the eighteen the controlled buys from the defendant occurred during the year in which he was supposed to be abiding by the law as a "condition" of the conditional discharge sentence imposed on May 4, 2017. *Id.* ¶ 55. That sentence clearly had no effect on the defendant. Accordingly, a Guidelines sentence in this case will not run counter to the notion that the justice system should allow for redemption. It will, however, convey—as it should—that an offender who repeatedly breaks the law will eventually face meaningful, serious consequences for his conduct.

*Third*, a sentence within the Guidelines range is needed to adequately punish the defendant and to demonstrate the seriousness of his conduct, including his years of criminal activity, which has harmed the citizens of the Lambert Houses and broader Tremont community. Such a sentence would also promote respect for the law and serve to deter the defendant from future crimes—a goal that was not accomplished by any of the defendant's prior sentences, including his year in prison or the conditional discharge that was in effect when he sold crack and heroin to law enforcement sixteen times. Looking beyond the defendant himself, in a case like this, where the defendant was known to be a member of a large conspiracy that was charged federally, there is a significant need for general deterrence—*i.e.*, for others who aspire to profit from the drug trade to learn that such activity will result in a lengthy sentence if prosecuted in federal court. In addition, a Guidelines sentence in this case will help protect the public from the defendant, his co-conspirators, and anyone else deterred by the incarceration of defendants in this case.

*Finally*, a 60-month sentence in this case would create a disparity between the defendant and co-defendant Padilla. Although the PSR's offense conduct section contains more detail about Padilla than about the defendant, it is not correct that "Padilla was significantly more culpable than" the defendant. Def.'s Mem. at 6. As noted, the defendant at times supplied Padilla via "flips," and Padilla facilitated the defendant's business by bringing the defendant customers. Turning to their criminal histories, the defendant was arrested *22 times* before his arrest in this case (compared to Padilla's 18 prior arrests), including two for criminal possession of a controlled substance with intent to sell, two for menacing with a weapon, three for criminal possession of a weapon, and two for criminal possession of a loaded firearm. The defendant also has eight prior convictions (to Padilla's four). And the defendant has previously been sentenced to a year in prison (whereas Padilla's longest sentence of incarceration was five days).

**IV.    Conclusion**

     For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 70 to 87 months' imprisonment.

                                          Respectfully submitted,

                                          GEOFFREY S. BERMAN
                                          United States Attorney for the
                                          Southern District of New York

                         By: _____
                                          Frank J. Balsamello / Sarah Krissoff /
                                             Dominic Gentile
                                          Assistant United States Attorneys
                                          (212) 637-2325 / -2232 / -2567

cc:    Avraham Moskowitz, Esq., *counsel for defendant Darrell Hudson* (by ECF)